Filed 3/18/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN AMIS, | B248447 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC426815) |
| v. | |
| GREENBERG TRAURIG LLP et al., | |
| Defendants and Respondents | |

APPEAL from judgment of the Superior Court of Los Angeles County, Charles F. Palmer, Judge. Affirmed.

Roger L. Stanard for Plaintiff and Appellant.

Gaims Weil West, Alan Jay Weil and Steven S. Davis for Defendants and Respondents.

_____

**INTRODUCTION**

In this opinion we again acknowledge our Supreme Court's near categorical prohibition against judicially crafted exceptions to the mediation confidentiality statutes and hold a malpractice plaintiff cannot circumvent mediation confidentiality by advancing inferences about his former attorney's supposed acts or omissions during an underlying mediation.

Plaintiff John Amis (Amis) appeals from a summary judgment in favor of his former attorneys Greenberg Traurig, LLP, Naoki Kawada and John M. Gatti (collectively, GT). Amis's operative complaint alleges GT committed attorney malpractice by "caus[ing]" him to execute a settlement agreement that converted his company's corporate obligations into Amis's personal obligations without advising Amis that he had little to no risk of personal liability in the underlying litigation. GT moved for summary judgment citing Amis's undisputed admission that all advice he received from GT regarding the settlement agreement was given during a mediation. Based on this undisputed fact, GT argued Amis could not obtain evidence to support his claims, and GT could not produce evidence to defend itself, because the disclosure of such evidence was barred by the mediation confidentiality statutes. The trial court agreed on both counts and entered summary judgment for GT. We affirm.

**FACTS[1] AND PROCEDURAL BACKGROUND**

1.      *The Path Litigation*

Amis was a minority shareholder and officer of Pacific Marketing Works, Inc. (Pacific), a company that exported woman's clothing apparel to Japan. In 2006, Pacific

---

[1]      We draw the material facts largely from GT's separate statement of undisputed facts, which Amis either conceded or did not effectively counter with admissible evidence. (See, e.g., *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 335, 340, fn. 1 (*Chateau Chamberay*); *R. P. Richards, Inc. v. Chartered Construction Corp.* (2000) 83 Cal.App.4th 146, 151, fn. 3.) To the extent Amis offered additional or competing facts on a material issue, we state the evidence admitted by the trial court in the light most favorable to Amis, as the nonmoving party, in accordance with the standard of review applicable to summary judgments. (See *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

sued Path Productions, LLC and its principals (collectively, Path) alleging Path breached a 2002 contract to design apparel for Pacific. Path responded with a cross-complaint against Pacific, Amis and other Pacific shareholders, alleging, inter alia, breach of contract, fraud and alter ego liability (the Path Litigation).

In June 2007, while the Path Litigation was pending, Pacific entered into a proposal for acquisition with a Japanese entity, Sojitz Corporation, which had expressed interest in purchasing Pacific's assets. GT represented Sojitz in the proposed transaction. One of the proposal's terms required "favorable settlement or resolution" of the Path Litigation.

Until September 2007, Amis and his co-cross defendants were represented in the Path Litigation by two law firms—Miller Barondess and Radcliff & Saiki. When those firms withdrew, Amis and company engaged GT to represent them in the Path Litigation, and Sojitz agreed to pay GT's fees for the representation. GT obtained a written conflict waiver from all interested parties, which included a declaration that its "representation of [Pacific] and its [shareholders] in the [Path Litigation] will not be compromised or adversely affected by our representation of Sojitz in connection with [the Pacific acquisition]."

### 2. *The Path Litigation Is Settled at Mediation*

Shortly after GT took over Amis's representation in the Path Litigation, the parties engaged in two separate rounds of mediation in October and November of 2007. Amis attended both mediations. At the November 2007 mediation, the parties negotiated and executed a written settlement agreement and mutual general release.

Under the settlement agreement, Amis and the other Pacific parties agreed, jointly and severally, to pay $2.4 million to Path on an agreed payment schedule beginning on December 26, 2007, in exchange for dismissals with prejudice of each side's claims and mutual releases. The parties further agreed to a stipulation for entry of judgment in the amount of $2.4 million (less any payments made) in favor of Path if the Pacific parties failed to make the agreed payments when due.

3

### 3. *Amis's Complaint Against GT*

Shortly after the parties executed the mediated settlement agreement in the Path Litigation, Sojitz decided not to acquire Pacific's assets, leaving Amis and the other Pacific shareholders without sufficient funds to make the scheduled settlement payments. In January 2008, Path declared a default and successfully moved for entry of the stipulated judgment pursuant to the settlement agreement. When Path attempted to enforce the judgment, Amis and the other Pacific parties declared bankruptcy.

In November 2009, Amis filed the instant action against GT. The operative first amended complaint asserts three causes of action for breach of fiduciary duty, attorney malpractice and breach of the conflict waiver. In support of the claims, Amis alleges GT (1) "failed [to] advise [him] of the risks involved for his personal liability under the proposed settlement agreement"; (2) "drafted, structured, and caused to be executed a settlement agreement and stipulated judgment converting the corporate obligations of [Pacific] into [Amis's] personal obligations"; and (3) breached the conflict waiver by "failing to negotiate a settlement that was contingent on Sojitz's purchase of [Pacific's] assets in an amount sufficient to fund the settlement."

### 4. *GT's Motion for Summary Judgment*

GT deposed Amis in advance of its motion for summary judgment. At his deposition, Amis admitted that all "discussions," "explanations," and "recommendations" that he had with or received from GT regarding the settlement agreement occurred during the mediation.[2] Amis also admitted that all his claimed damages resulted from executing the settlement agreement at the mediation.

---

[2]    In response to GT's separate statement, Amis purported to dispute these facts on the ground that "[t]his evidence [referring to his deposition testimony] is inadmissible under the provisions of Evidence Code § 1119(c)"—i.e., the mediation confidentiality statute. As section 1119 shields evidence of "anything said or any admission made" in the course of a mediation—not evidence of whether a particular topic was ever discussed *outside of mediation*—Amis's objection was wholly unfounded. Further, inasmuch as Amis merely quarreled with the admissibility of the evidence, but failed to offer any competing evidence to rebut his deposition admission, these facts are properly regarded as undisputed. (See, e.g., *Chateau Chamberay, supra,* 90 Cal.App.4th at p. 340, fn. 1.)

4

Based on the foregoing undisputed facts, GT moved for summary judgment. Because Amis alleged GT caused him to execute the settlement agreement without advising him of the implications for his personal liability, and all GT's discussions with Amis regarding the settlement agreement occurred during the mediation, GT argued "[b]oth sides must necessarily rely on communications made in connection with that mediation in order to prove or rebut [Amis's] claims." However, since the mediation confidentiality statutes barred each side from offering evidence of such communications, GT argued Amis could not prove an essential element of his claims, nor could it effectively defend itself against his allegations. Under either circumstance, GT maintained it was entitled to summary judgment.

Amis opposed the motion with his own declaration and declarations from other attorneys in the Path Litigation, including Path's attorney, Douglas Dal Cielo, and the Pacific parties' former attorney, Eric H. Saiki. With his declaration, Amis sought to establish that he never would have attended the mediation, nor would he have agreed to be jointly and severally liable for Pacific's liabilities, had he been advised prior to mediation that he had little to no risk of being held personally liable on Path's claims. Dal Cielo and Saiki each declared that if the Path Litigation had gone to trial, Amis would not have been found personally liable.

Amis also submitted the declaration of his proffered legal malpractice expert, Robert C. Baker. Baker opined that GT's conduct fell below the standard of care and there was "no advice [GT] could have given to John Amis during mediation that would justify making John Amis personally liable for payment of $2,400,000." Setting aside any communications that might have occurred during the mediation, Amis argued all the evidence, when taken together, permitted a reasonable inference that GT's misconduct caused him to execute the settlement agreement and incur personal liability that he otherwise would have avoided had the Path Litigation gone to trial.

5

5.	*The Summary Judgment Ruling*

The trial court granted GT's summary judgment motion. The court agreed that Amis could not establish an essential element of his claims, because it was undisputed that any act or omission by GT that purportedly caused Amis to execute the settlement agreement occurred during the mediation. The court also refused to entertain an inference that GT caused Amis to execute the settlement agreement during mediation, because the mediation confidentiality statutes effectively barred GT from defending itself against such an inference.

## DISCUSSION

1.	*Standard of Review*

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We " 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citation], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar, supra,* 25 Cal.4th at p. 843.) We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222.)

A defendant is entitled to summary judgment upon a showing that the plaintiff's action has no merit. (Code Civ. Proc., § 437c, subd. (a).) The defendant meets this burden with respect to each cause of action by establishing undisputed facts that negate one or more elements of the claim or state a complete defense to the cause of action. (*Id.*, subd. (p)(2).) Alternatively, "a defendant may meet its burden of showing that an essential element of the plaintiff's claim cannot be established [by] present[ing] evidence that the plaintiff 'does not possess, and cannot reasonably obtain, needed evidence.' " (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 110 (*Lona*), quoting *Aguilar, supra,*

6

25 Cal.4th at p. 854.) "Such evidence may consist of the deposition testimony of the plaintiff's witnesses, the plaintiff's factually devoid discovery responses, or admissions by the plaintiff in deposition or in response to requests for admission . . . ." (*Lona,* at p. 110.)

Once the defendant has made the requisite initial showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists. (*Aguilar, supra,* 25 Cal.4th at pp. 849.) "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Id.* at p. 850.)

2. *The Mediation Confidentiality Statutes Preclude Amis from Obtaining and Presenting Evidence of the Acts or Omissions by GT that Purportedly Caused Him to Execute the Settlement Agreement*

Amis admits that his alleged damages in this action stem entirely from entering into the settlement agreement. He also admits that any communications he had with GT regarding the settlement agreement occurred in the course of the mediation. Based on these undisputed facts, the trial court concluded the mediation confidentiality statutes preclude Amis from proving that GT's acts or omissions caused his damages in this case. We reach the same conclusion.

Mediation confidentiality is codified in Evidence Code section 1115 et seq.[3] "With specified statutory exceptions, neither 'evidence of anything said,' nor any 'writing,' is discoverable or admissible 'in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which . . . testimony can be compelled to be given,' if the statement was made, or the writing was prepared, 'for the purpose of, in the course of, or pursuant to, a mediation . . . .' " (*Cassel v. Superior Court* (2011) 51 Cal.4th 113, 117 (*Cassel*), quoting § 1119, subds. (a), (b).) Even after mediation ends, communications and writings protected by the statutes are to remain confidential. (§ 1126.)

---

[3]     Unless otherwise designated, all statutory references are to the Evidence Code.

Our Supreme Court has broadly applied the mediation confidentiality statutes and all but categorically prohibited judicially crafted exceptions, even in situations where justice seems to call for a different result. (*Cassel, supra,* 51 Cal.4th at p. 118; see *Wimsatt v. Superior Court* (2007) 152 Cal.App.4th 137, 152 (*Wimsatt*).) "To carry out the purpose of encouraging mediation by ensuring confidentiality, the statutory scheme . . . unqualifiedly bars disclosure of communications made during mediation absent an express statutory exception." (*Foxgate Homeowners' Assn. v. Bramalea California, Inc.* (2001) 26 Cal.4th 1, 15 (*Foxgate*); accord, *Rojas v. Superior Court* (2004) 33 Cal.4th 407, 416; *Fair v. Bakhtiari* (2006) 40 Cal.4th 189, 194.) "Judicial construction, and judicially crafted exceptions, are permitted only where due process is implicated, or where literal construction would produce absurd results, thus clearly violating the Legislature's presumed intent. Otherwise, the mediation confidentiality statutes must be applied in strict accordance with their plain terms. Where competing policy concerns are present, it is for the Legislature to resolve them." (*Cassel,* at p. 124; *Simmons v. Ghaderi* (2008) 44 Cal.4th 570, 582-583; *Foxgate,* at pp. 14-17.)

The Supreme Court's holding in *Cassel* dictates the result we reach in this case. The plaintiff in *Cassel* sued his attorneys for malpractice, alleging the attorneys "induced him to settle" a business dispute for less than the case was worth by coercing him to enter a settlement agreement during mediation. (*Cassel, supra,* 51 Cal.4th at p. 118.) The Supreme Court upheld the trial court's order precluding evidence related to the mediation, including private discussions the plaintiff had with his attorneys about the settlement. In doing so, the high court rejected the Court of Appeal majority's view that "[t]he mediation confidentiality statutes do not extend to communications between a mediation participant and his or her own attorneys outside the presence of other participants in the mediation." (*Id.* at pp. 121-122, 129-134.)

The *Cassel* court recognized its holding may hinder the client's ability to prove a legal malpractice claim against his or her lawyers. (*Cassel, supra,* 51 Cal.4th at pp. 122, 133-134.) Nevertheless, the court emphasized the judiciary had no authority to craft its own exceptions to the mediation confidentiality statutes, "even where the equities

8

appeared to favor them." (*Id.* at p. 133.) Quoting from our opinion in *Wimsatt*, the high court acknowledged " '[t]he stringent result we reach here means that when clients, such as [the malpractice plaintiff in [*Wimsatt*]], participate in mediation they are, in effect, relinquishing all claims for new and independent torts arising from mediation, including legal malpractice causes of action against their own counsel.' " (*Cassel,* at p. 133, quoting *Wimsatt, supra,* 152 Cal.App.4th at p. 163; see also *Cassel,* at p. 138 (conc. opn. of Chen, J.) ["This holding will effectively shield an attorney's actions during mediation, including advising the client, from a malpractice action even if those actions are incompetent or even deceptive."].) Be that as it may, the court stated, " 'if an exception is to be made for legal misconduct, it is for the Legislature to do, and not the courts. [Citation.]' " (*Cassel,* at p. 133, quoting *Wimsatt,* at p. 163.)[4]

Applying *Cassel* to the undisputed facts of this case, we reach the same conclusion as the trial court. Amis cannot prove that any act or omission by GT caused him to enter the settlement agreement and, hence, to suffer his alleged injuries, because all communications he had with GT regarding the settlement agreement occurred in the context of mediation. (*Cassel, supra,* 51 Cal.4th at pp. 132, 136.) We sympathize with Amis's assertion that "[m]ediation confidentiality was never intended to protect attorneys from malpractice claims"; however, as we recognized in *Wimsatt*, that seemingly unintended consequence is for the Legislature, not the courts, to correct. (See *Wimsatt, supra,* 152 Cal.App.4th at p. 164 ["Given the number of cases in which the fair and equitable administration of justice has been thwarted, perhaps it is time for the Legislature to reconsider California's broad and expansive mediation confidentiality statutes and to craft ones that would permit countervailing public policies be

---

[4] In *Wimsatt*, we held that mediation briefs and attorney e-mails written and sent in connection with mediation were protected by the mediation confidentiality statutes, even when a mediation disputant sought these materials to support a legal malpractice action against his own attorneys. (*Wimsatt, supra,* 152 Cal.App.4th at pp. 158-159.) In so holding we recognized, as the Supreme Court confirmed in *Cassel*, that there is no attorney malpractice exception to the mediation confidentiality statutes. (*Wimsatt,* at pp. 162-164; *Cassel, supra,* 51 Cal.4th at p. 133.)

9

considered."].) Because the mediation confidentiality statutes bar Amis from presenting the critical evidence necessary to establish GT's acts or omissions caused his alleged injuries, the trial court properly granted summary judgment.

3. *The Mediation Confidentiality Statutes Preclude Inferences Concerning GT's Supposed Acts or Omissions During the Mediation*

On appeal, Amis does not dispute that "whatever advice he received regarding the Settlement Agreement was given during mediation," nor does he dispute that evidence of such advice is inadmissible under the mediation confidentiality statutes. He nevertheless contends "there is direct, admissible, and undisputed evidence that Amis consulted with GT, and was advised by GT, during mediation before signing the agreement," and that "[w]hatever specific advice was given, or not given, resulted in a contract making Amis personally liable." Thus, he argues "[i]t is reasonable to infer from the fact that GT advised Amis regarding the terms of the settlement documents, that GT consented to Amis signing those documents" at mediation. Insofar as the trial court refused to draw this inference to find a triable issue of fact on causation, Amis contends the court erred. We disagree.

Amis's proposed inference is fundamentally at odds with the mediation confidentiality statutes' directive. To permit such an inference would allow Amis to attempt to accomplish indirectly what the statutes prohibit him from doing directly— namely, proving GT advised him to execute the settlement agreement during the mediation. Further, insofar as there is no statutory exception to mediation confidentiality that permits GT to rebut the inference by showing what advice it actually gave Amis during mediation, the relevant authorities all counsel against permitting the inference to be drawn.

*In re Marriage of Woolsey* (2013) 220 Cal.App.4th 881 (*Woolsey*) is instructive. In that case, a husband challenged a mediated marital settlement agreement, claiming "undue influence on [him] during the mediation render[ed] the agreement unenforceable." (*Id.* at p. 888.) The husband did not attempt to introduce direct evidence showing the wife actually engaged in undue influence during the mediation; rather, he

10

resorted to the rule that "[w]hen an interspousal transaction advantages one spouse, '[t]he law, from considerations of public policy, presumes such transactions to have been induced by undue influence.' " (*In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 293; *Woolsey,* at p. 901.)  The *Woolsey* court rejected the proffered presumption, concluding "the mediation confidentiality provisions of Evidence Code section 1119 protect the mediation process and preclude any claim of undue influence."  (*Woolsey,* at p. 903.)  Addressing the presumption directly, the court explained:  " '[T]o apply the presumption of undue influence to mediated marital settlements would severely undermine the practice of mediating such agreements.  Application of the presumption would turn the shield of mediation confidentiality into a sword by which any unequal agreement could be invalidated.  We do not believe that the Legislature could have intended that result when it provided for spousal fiduciary duties on the one hand and for mediation confidentiality on the other.' "  (*Id.* at p. 902; accord *In re Marriage of Kieturakis* (2006) 138 Cal.App.4th 56, 86 [reasoning that if undue influence presumption attached to mediated marital settlement agreement "the disadvantaged party could claim, for example, to have acted under duress, refuse to waive the [mediation confidentiality] privilege, and thereby prevent the other party from introducing the evidence required to carry the burden of proving that no duress occurred"].)

The *Woolsey* court's reasoning is apposite and compelling.  Here, Amis does not dispute that the mediation confidentiality statutes preclude him and GT from relying upon mediation communications to support or rebut the causation element of his claims.  Nevertheless, even without direct "eye-witness evidence" of what occurred during mediation, Amis contends the trier of fact should be permitted to draw the inference that the "oral advice he was given, or not given, by GT during the mediation" caused him to execute the settlement agreement.  But this, as in *Woolsey*, would turn mediation confidentiality into a sword by which Amis could claim he received negligent legal advice during mediation, while precluding GT from rebutting the inference by explaining

11

the context and content of the advice that was actually given.[5] Such a result cannot be squared with *Woolsey* or the Supreme Court's holding in *Cassel*. (See *Cassel, supra,* 51 Cal.4th at p. 136 ["The Legislature also could rationally decide that it would not be fair to allow a client to support a malpractice claim with excerpts from private discussions with counsel concerning the mediation, while barring the attorneys from placing such discussions in context by citing communications within the mediation proceedings themselves."].)

Along the same lines, permitting a jury to draw the inference Amis advances would amount to an irregularity in proceedings mandating a new trial. Section 1128 provides, "Any reference to a mediation during any subsequent trial is an irregularity in the proceedings of the trial for the purposes of Section 657 of the Code of Civil Procedure."[6] The Law Revision Commission Comments to section 1128 explain that "[a]n appropriate situation for invoking this section is where a party urges the trier of fact to draw an adverse inference from an adversary's refusal to disclose mediation communications." The inference Amis would have the jury draw—that GT's advice during mediation caused him to enter the settlement agreement—is tantamount to the adverse inference that section 1128 prohibits, because GT is barred from disclosing relevant mediation communications to rebut the charge. The trial court properly refused to entertain Amis's proffered inference in ruling on GT's summary judgment motion.

---

[5] Amis contends "GT can defend itself by providing a justification for why it was in Amis'[s] interest to agree to the terms of the Settlement Agreement." This assertion begs the question, inasmuch as it assumes the truth of Amis's proffered inference—namely, that GT in fact advised Amis to enter the agreement. While GT might attempt to advance a competing inference—for instance, that Amis made a business decision to accept the settlement terms over GT's contrary advice because the Sojitz deal hinged on settling the Path Litigation—either inference would be improper, because neither Amis nor GT is permitted to rebut the other's competing inference by showing what communications actually occurred during mediation.

[6] Code of Civil Procedure section 657 specifies the grounds upon which the trial court can order a new trial, including, under subdivision 1, an "[i]rregularity in the proceedings of the court . . . by which either party was prevented from having a fair trial."

12

## DISPOSITION

The summary judgment is affirmed.  Defendants Greenberg Traurig, LLP, Naoki Kawada and John M. Gatti are entitled to their costs.

**CERTIFIED FOR PUBLICATION**

KITCHING, Acting P. J.

We concur:

ALDRICH, J.

LAVIN, J.[*]

_____

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.