Filed 7/21/21  Keshen v. Buffington CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARY ANNE KESHEN,<br><br>  Plaintiff, Cross-defendant and Appellant,<br><br>  v.<br><br>ROGER J. BUFFINGTON et al.,<br><br>  Defendants and Respondents;<br><br>BUFFINGTON LAW FIRM, PC,<br><br>  Cross-complainant and Respondent. | G058680<br><br>(Super. Ct. No. 30-2017-00952663)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Sheila Fell, Judge.  Affirmed.

Mary Anne Keshen, in pro. per., for Plaintiff, Cross-defendant and Appellant.

Robie & Matthai, Marta A. Alcumbrac and Gabrielle M. Jackson for Defendants and Respondents.

Law Office of Henry B. LaTorraca and Henry B. LaTorraca for Cross-complainant and Respondent.

\*     \*     \*

## INTRODUCTION

Mary Anne Keshen filed a legal malpractice action against her former attorney and his law firm, and the law firm filed a cross-complaint for unpaid attorney fees.  The malpractice action was resolved against Keshen by summary judgment.  Following a bench trial on the cross-complaint, the trial court awarded damages to the law firm.  Keshen appeals from the ensuing judgment.  Finding no merit to any of her claims, we affirm.

## STATEMENT OF FACTS

In March 2013, Keshen sued Terrence Tallen, her former business partner, for the alleged theft of funds from several of their jointly-owned real estate investment businesses (the Tallen litigation).  Tallen filed a cross-complaint against Keshen.  Keshen retained Buffington Law Firm, P.C.,[1] to represent her in the Tallen litigation in September 2014.  Keshen's father, Leonard Keshen, paid all of the invoices for attorney fees and expert fees from Buffington Law.  Buffington Law did not obtain Keshen's informed written consent before accepting compensation from someone other than their client.  (Rules Prof. Conduct, former rule 3-310(F).)

The trial court in the Tallen litigation appointed a receiver to manage the entities involved in the litigation and prepare forensic accounting reports to "ascertain the expenditures of these entities and monies converted by Tallen."  The receiver's final report to the trial court concluded that Keshen's distributions from the entities exceeded

_____

[1] We will refer to Buffington Law Firm, P.C. as Buffington Law, and to Roger J. Buffington as Attorney Buffington.

2

Tallen's by almost $1 million.  In response, Buffington Law, on behalf of Keshen, hired an accounting firm, SingerLewak LLP, to perform an analysis and forensic accounting of the entities.  The SingerLewak report concluded that Tallen had taken more than $3.667 million in distributions from the entities, which was significantly more than the receiver had concluded.

The parties reached a settlement of the Tallen litigation at a mediation in January 2016; Tallen and Keshen both signed a written stipulation for settlement. Buffington Law and Attorney Buffington contend that before the mediation, they discussed with Keshen mediation strategies and issues to be presented at the mediation, including but not limited to the presentation of the SingerLewak report.  Keshen contends that Buffington Law and Attorney Buffington told her the SingerLewak report was not completed at the time of the mediation.  Before hiring Buffington Law and throughout the litigation, Keshen informed Attorney Buffington "she had no interest in settling the matter at any point and wanted the case to go to trial."

After the mediation, Keshen represented herself during negotiations for a formal written settlement agreement.  When those negotiations broke down, Tallen moved to compel arbitration based on the stipulation for settlement.  Keshen represented herself in propria persona at the arbitration.  In December 2017, the arbitrator ruled that the mediated settlement agreement was enforceable.

Although Keshen submitted a written brief, she did not appear at the evidentiary hearing before the arbitrator.  In June 2018, a final arbitration award was issued.  The award confirmed certain portions of the written stipulation for settlement that were still disputed between Keshen and Tallen.  Tallen then moved the trial court to confirm the arbitration award, and judgment was entered in favor of Tallen in October 2018; Keshen did not appeal from that judgment.

3

## PROCEDURAL HISTORY

In March 2017, Keshen sued Buffington Law and Attorney Buffington for legal malpractice arising out of the Tallen litigation (the malpractice litigation). Keshen's causes of action were for negligence, negligence per se, breach of fiduciary duty, intentional misrepresentation, negligent misrepresentation, fraud by concealment, and breach of contract. All were based on Keshen's allegations that Buffington Law and Attorney Buffington lied to her about the status of the SingerLewak report, bullied her into settling the Tallen litigation at mediation, and did not represent her interests or competently perform their duties in connection with the stipulation for settlement. The malpractice litigation sought compensatory and punitive damages and disgorgement of legal fees.

After the malpractice litigation was transferred from Los Angeles County to Orange County, Buffington Law filed a cross-complaint against Keshen for breach of contract, quantum meruit, and for a book account, seeking the fees owing for legal services performed in the Tallen litigation.

In March 2018, the malpractice litigation was stayed while the arbitration in the Tallen litigation was proceeding. The stay was lifted on May 31, 2018, and at that time the trial of the malpractice litigation was set for June 17, 2019.

Buffington Law and Attorney Buffington filed a motion for summary judgment of Keshen's complaint on the ground all her claims were barred by the mediation privilege. Keshen responded by filing a motion for leave to amend her complaint. Keshen's motion for leave to amend was denied, and the motion for summary judgment was granted.

Buffington Law and Attorney Buffington also filed a motion pursuant to Code of Civil Procedure section 1030 to require Keshen to post an undertaking in connection with her malpractice claims. The trial court granted the motion; Keshen never posted the required undertaking. Buffington Law and Attorney Buffington later filed a

4

motion to dismiss Keshen's complaint for failure to post the undertaking.  The trial court granted the motion to dismiss.

At the same time the trial court granted the motion for summary judgment, it also granted Buffington Law's motion to deem Keshen to have admitted all of Buffington Law's requests for admission in connection with the cross-complaint due to her failure to timely respond to the discovery propounded by Buffington Law.

A bench trial on Buffington Law's cross-complaint was conducted in September 2019.  Neither party requested a statement of decision.  The trial court awarded Buffington Law $90,622 as quantum meruit damages.  Judgment was entered in favor of Buffington Law and Attorney Buffington on Keshen's complaint, and in favor of Buffington Law on its cross-complaint.  Keshen appealed from the judgment.[2]

## DISCUSSION

### I.

### ISSUES RELATING TO KESHEN'S COMPLAINT

### A.

### *THE TRIAL COURT PROPERLY GRANTED SUMMARY JUDGMENT OF THE COMPLAINT.*

"We review orders granting summary judgment de novo.  [Citation.] Summary judgment is warranted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law.  [Citations.] [¶] We consider all of the evidence presented by the parties (except for evidence which the trial court properly excluded), liberally construe the evidence in support of the party opposing summary judgment, and resolve all doubts about the evidence in that party's favor.  [Citation.]  We must draw from the evidence all reasonable inferences in the light

---

[2]  Keshen also filed a separate lawsuit against Buffington Law for violation of the Rules of Professional Conduct and the Business and Professions Code.  The trial court sustained a demurrer to that lawsuit, and Keshen filed a notice of appeal from the judgment of dismissal.  On our own motion, we have taken judicial notice of the appellate record in case No. G058802.  No party objects.

5

most favorable to the party opposing summary judgment." (*Caliber Paving Co., Inc. v. Rexford Industrial Realty & Management, Inc.* (2020) 54 Cal.App.5th 175, 179-180.)

The motion for summary judgment argued that Keshen could not prevail on her complaint because all of her causes of action were based on alleged misconduct by Buffington Law and Attorney Buffington that occurred during, or was related to, the mediation at which the Tallen litigation was resolved. Specifically, Keshen alleged that Buffington Law and Attorney Buffington: "aggressively persuaded" her to engage in the mediation; coerced her to continue the mediation and physically stopped her from leaving the mediation on several occasions by physically blocking the door; failed to mention the SingerLewak report or its findings during the mediation to Keshen, the mediator, Tallen, or Tallen's counsel; ignored Keshen's repeated statements that she did not want to settle the case out of court but instead wanted to take the case to trial; aggressively attempted to convince Keshen that she should settle because she would not prevail at trial due to a lack of evidence; "poorly and hastily drafted" the written stipulation to settle and advised Keshen to sign it, despite the fact it contained unreasonable or unenforceable terms; without Keshen's knowledge or consent, agreed with Tallen's counsel to partition the assets at the mediation without recognition of the findings in the SingerLewak report; and never shared the SingerLewak report's findings with Keshen and falsely reported to her that the report was unfinished and would not be available for the mediation or trial, in reliance on which Keshen agreed to settle the Tallen litigation at the mediation.

To further the goal of settlement of litigation without trial, Evidence Code section 1119 broadly provides for the confidentiality of anything said in connection with a mediation. "No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given." (Evid. Code, § 1119,

6

subd. (a).) The statute's confidentiality provisions "are clear and absolute," and "they must be strictly applied and do not permit judicially crafted exceptions or limitations, even where competing public policies may be affected." (*Cassel v. Superior Court* (2011) 51 Cal.4th 113, 118 (*Cassel*).)

In *Cassel*, the California Supreme Court held that the confidentiality provisions of Evidence Code section 1119 apply to private communications between a client and the attorney representing him or her during a mediation. (*Cassel, supra,* 51 Cal.4th at p. 128.) In *Cassel*, the plaintiff sued the defendant attorneys for legal malpractice. (*Id.* at p. 119.) The plaintiff alleged that in the underlying trademark infringement lawsuit, among other things, the defendant attorneys badgered him into accepting a settlement during a pretrial mediation. (*Id.* at p. 120.) At a deposition in the legal malpractice case, the plaintiff testified about the communications he had had with the defendant attorneys before and during the mediation, outside the presence of the mediator or other mediation participants. (*Id.* at pp. 120-121.) The trial court granted the defendant attorneys' motion in limine to exclude all such communications at trial. (*Id.* at p. 121.)

The Court of Appeal reversed, concluding that the mediation confidentiality statutes were intended to allow the disputing parties in a mediation to discuss the case candidly without fear that their thoughts on the strengths and weaknesses of their case would later be used against them. (*Cassel, supra*, 51 Cal.4th at pp. 121-122.) The majority of the Court of Appeal therefore held that the mediation privilege did not apply to prevent a client from establishing a case of legal malpractice against his or her own attorneys by offering evidence of their private attorney-client communications that were conducted outside the presence of other participants in the mediation. (*Ibid.*)

The Supreme Court, reversing the appellate court, concluded that the mediation privilege of Evidence Code section 1119 "'extends to oral communications made *for the purpose of or pursuant to* a mediation, not just to oral communications

7

made *in the course* of the mediation. [Citation.]' [Citations.] [¶] The obvious purpose of the expanded language is to ensure that the statutory protection extends beyond discussions carried out directly between the opposing parties to the dispute, or with the mediator, during the mediation proceedings themselves. All oral or written communications are covered, if they are made 'for the purpose of' or 'pursuant to' a mediation. [Citation.] It follows that, absent an express statutory exception, all discussions conducted in preparation for a mediation, as well as all mediation-related communications that take place during the mediation itself, are protected from disclosure. Plainly, such communications include those between a mediation disputant and his or her own counsel, even if these do not occur in the presence of the mediator or other disputants." (*Cassel, supra,* 51 Cal.4th at p. 128.)

Confidentiality under Evidence Code section 1119 applies "where the writing or statement would not have existed but for a mediation communication, negotiation, or settlement discussion." (*Wimsatt v. Superior Court* (2007) 152 Cal.App.4th 137, 160 (*Wimsatt*).) The statute applies to "any communications between mediation participants before the end of mediation that occur *outside* the mediator's presence, provided that these communications are materially related to the mediation." (*Eisendrath v. Superior Court* (2003) 109 Cal.App.4th 351, 364.)

Courts have recognized that the mediation privilege may prevent a client from bringing a malpractice action against his or her attorney based on the attorney's alleged malpractice in connection with the settlement of the case; the balancing of conflicting policy concerns is a matter left to the Legislature, not the courts. (See *Cassel, supra*, 51 Cal.4th at pp. 122, 132, 136 [mediation confidentiality statutes may negatively affect the client's ability to prove a legal malpractice claim against the lawyers]; *Amis v. Greenberg Traurig* (2015) 235 Cal.App.4th 331, 339-340 [protecting attorneys from malpractice claims is an "unintended consequence" of mediation confidentiality]; *Wimsatt, supra*, 152 Cal.App.4th at pp. 162-163 [participation in mediation in effect

8

relinquishes client's claims for new and independent torts arising from mediation, including legal malpractice].)

Keshen argues that the mediation privilege "seeks to protect from disclosure and use in another legal proceeding, only that which was stated, written or otherwise communicated, during the mediation itself, or, in preparation for it." This argument is directly contrary to the Supreme Court's holding in *Cassel*, which we are required to follow. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)[3]

Keshen also argues that mediation privilege is not absolute, and does not apply in all cases. The authority she cites for this proposition is distinguishable, however. In *Campagnone v. Enjoyable Pools & Spas Service & Repairs, Inc.* (2008) 163 Cal.App.4th 566, 572, the court permitted a party to the mediation to advise the trial court that another party did not have a representative with settlement authority at the mediation, in violation of local court rules. In *Rinaker v. Superior Court* (1998) 62 Cal.App.4th 155, 165-171, the court held that a juvenile delinquent's due process rights to confront and cross-examine witnesses would permit him to call as a witness the mediator at a voluntary civil harassment dispute mediation. And in *Wimsatt, supra*, 152 Cal.App.4th at pages 148-149, the court noted that the statute prohibiting mediators from testifying in civil proceedings does not apply where the testimony relates to the commission of a crime, such as the commission of perjury.

Furthermore, Keshen's argument is incorrect. In order to succeed on her claims against Buffington in the legal malpractice litigation, Keshen would have had to prove, among other elements, a causal connection between Buffington's allegedly negligent conduct and Keshen's injury. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821.) To establish causation, Keshen would be required to "establish that

---

[3] Keshen did not address *Cassel* in her opposition to the summary judgment motion or her appellate briefs.

*but for* the alleged negligence of [Buffington], [Keshen] would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred." (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241.)

Although Keshen argues that her claims concern Buffington's conduct before the mediation, to prove causation and damages, she would have to establish why she agreed to the settlement at the mediation. This, in turn, would require Keshen to establish what happened at the mediation. And this is what Evidence Code section 1119 prohibits. (*Amis v. Greenberg Traurig, supra*, 235 Cal.App.4th at p. 340 [if all communications between lawyer and client regarding settlement agreement occurred "in the context of mediation" client cannot prove lawyer's malpractice caused the client to enter the settlement agreement and to suffer damages; lawyer's motion for summary judgment granted].)

The trial court did not err in granting the motion for summary judgment on Keshen's complaint.[4]

---

[4] Wholly aside from the issue of Evidence Code section 1119, the motion for summary judgment could have been granted because Keshen's separate statement in opposition to the motion for summary judgment did not comply with Code of Civil Procedure section 437c. Code of Civil Procedure Section 437c, subdivision (b)(3), requires that "[e]ach material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence. Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion." Of the 36 undisputed material facts in Buffington's separate statement, Keshen provided a reference to supporting evidence in connection with only two. A typical response from Keshen is the following: "Disputed based on privacy, irrelevancy, and admissibility."

California Rules of Court, rule 3.1350(f)(2) similarly provides that the response to an alleged undisputed material fact "must unequivocally state whether that fact is 'disputed' or 'undisputed.' An opposing party who contends that a fact is disputed must state . . . the nature of the dispute and describe the evidence that supports the position that the fact is controverted. Citation to the evidence in support of the position that a fact is controverted must include reference to the exhibit, title, page, and line numbers." Many of Keshen's responses are not unequivocal, including the following frequent response: "Undisputed as a fact only, disputed as to any evidentiary affect or relevance."

*THE TRIAL COURT DID NOT ERR BY DENYING THE MOTION TO AMEND THE COMPLAINT.*

After Buffington Law and Attorney Buffington filed the motion for summary judgment, Keshen filed a motion for leave to file a first amended complaint. The motion for leave to amend candidly admitted that it was made in direct response to the motion for summary judgment: "After considering the arguments in the MSJ, and conducting further research into more appropriate causes of action, the Plaintiff has decided that amendment is necessary and will more accurately reflect the liability issues in the case and the damages claimed to have been suffered as a result of that liability."

Buffington Law and Attorney Buffington opposed the motion primarily on the grounds of prejudice due to Keshen's "inexcusable delay" in seeking to amend her complaint. The trial court denied Keshen's motion: "Plaintiff's delay of at least 8 months in seeking amendment [until after Defendants filed their motion for Summary Judgment] was unwarranted; It would be unfair to allow Plaintiff to defeat summary judgment by moving the target at this late date; Deny."

We review the denial of a motion for leave to amend a complaint or answer for abuse of discretion. (*Foroudi v. The Aerospace Corp.* (2020) 57 Cal.App.5th 992, 1000.) Unreasonable delay alone can justify denial of a motion for leave to amend. (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486-488.)

In order to properly determine whether Keshen's delay in seeking leave to amend was unreasonable, we identify here the key events on the timeline of the malpractice litigation:

March 3, 2017: Malpractice litigation filed by Keshen.

March 21, 2018: Malpractice litigation stayed during pendency of arbitration arising out of Tallen litigation settlement.

May 31, 2018: Malpractice litigation case management conference; stay of litigation lifted; Keshen advises trial court and the parties she intends to amend her complaint.

October 9, 2018: Judgment entered in Tallen litigation.

November 9, 2018: Woolsey fire destroys Keshen's property in Malibu.

February 19, 2019: Motion for summary judgment filed.

March 13, 2019: Keshen files motion for leave to amend complaint.

"[U]nwarranted delay in seeking leave to amend may be considered by the trial court when ruling on a motion for leave to amend [citation], and appellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is '"offered after long unexplained delay . . . or where there is a lack of diligence"' [citation]. Thus, when a plaintiff seeks leave to amend his or her complaint only after the defendant has mounted a summary judgment motion directed at the allegations of the unamended complaint, even though the plaintiff has been aware of the facts upon which the amendment is based, '[i]t would be patently unfair to allow plaintiffs to defeat [the] summary judgment motion by allowing them to present a "moving target" unbounded by the pleadings.'" (*Falcon v. Long Beach Genetics, Inc.* (2014) 224 Cal.App.4th 1263, 1280; see *Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 176; *Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 746; *Hulsey v. Koehler* (1990) 218 Cal.App.3d 1150, 1159.) A request for leave to amend made after the filing of a motion for summary judgment, when the trial date is near, may be denied due to the trial court's responsibilities under the Trial Court Delay Reduction Act. (Gov. Code, § 68600 et seq.; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2021) ¶ 10:51:12, p. 10-22.)

At a case management conference in May 2018, Keshen informed the trial court that she would be filing a motion for leave to amend her complaint. No such motion was filed, however, until March 2019, *after* the motion for summary judgment

12

had been filed. The motion for leave to amend does not provide any justification for the delay. Although Keshen argues repeatedly on appeal (as she did in the trial court) that a stay on the trial court proceedings during the pendency of the arbitration in the Tallen litigation prevented her from participating fully in the malpractice litigation, the record shows that the trial court lifted the stay of the malpractice litigation in May 2018, at the same conference at which Keshen indicated she would amend her complaint.

Although Keshen argues that the motion for summary judgment raised a "newly asserted affirmative defense," the mediation privilege was actually alleged as the twenty-ninth affirmative defense in the answer filed on February 2, 2018.

The trial court's denial of the motion for leave to amend the complaint due to Keshen's unjustified delay in filing the motion was not an abuse of discretion.

Further, the trial court does not abuse its discretion in denying a motion for leave to amend if there is no reasonable probability that the defects in the complaint can be cured by the proposed amendment. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810.) Here, the new causes of action proposed by Keshen would not have resolved the underlying problem of the mediation privilege issue. Keshen offered no new facts, just new theories of recovery. "[A]mendments are usually allowed after summary judgments have been filed only to repair complaints that are legally insufficient—in other words, those that would be subject to a motion for judgment on the pleadings. [Citations.] Appellants' proposed amendment would not cure a legally insufficient complaint, but rather, would state a different theory of recovery. Such an amendment is impermissible." (*Van v. Target Corp.* (2007) 155 Cal.App.4th 1375, 1387, fn. 2.)

C.

*THE TRIAL COURT DID NOT ERR BY GRANTING THE MOTION TO POST AN UNDERTAKING, OR BY DISMISSING KESHEN'S COMPLAINT FOR FAILURE TO POST THE UNDERTAKING.*

1.

*Standard of Review*

Pursuant to Code of Civil Procedure section 1030,[5] Buffington Law and Attorney Buffington filed a motion to require Keshen to post an undertaking for their attorney fees and costs in the malpractice action. That statute authorizes a trial court to order an out-of-state plaintiff to file an undertaking to secure an award of attorney fees and costs incurred in the proceeding if the defendant demonstrates a "reasonable possibility" of prevailing. (§ 1030, subd. (b).) The trial court's order under section 1030 is reviewed for abuse of discretion. (*Alshafie v. Lallande* (2009) 171 Cal.App.4th 421, 431.) Buffington Law and Attorney Buffington later filed a motion to dismiss the complaint based on Keshen's failure to post the ordered undertaking. The failure to file an ordered undertaking requires the dismissal of the proceeding. (§ 1030, subd. (d).)

Case law provides that a trial court has discretion to waive the undertaking requirement where the plaintiff establishes his or her indigency. (*Baltayan v. Estate of Getemyan* (2001) 90 Cal.App.4th 1427, 1433-1434.) In opposition to the motion for an undertaking, Keshen never contended she was indigent and only argued her financial situation should be considered (without providing specific evidence of her financial situation) in opposition to the later motion to dismiss.

---

[5] All further statutory references are to the Code of Civil Procedure, unless otherwise specified.

14

2.

*The Trial Court Did Not Err by Granting the Motion for an Undertaking.*

Keshen argues on appeal that the undertaking order should not have been entered because (1) she was a resident of California and (2) there was no valid contract under which attorney fees could be awarded.

For purposes of section 1030, residence means "the actual dwelling of the plaintiff and not . . . any technical legal domicile which he may have." (*Myers v. Carter* (1960) 178 Cal.App.2d 622, 626; see *Mireskandari v. Daily Mail & General Trust PLC* (C.D.Cal. July 31, 2013) 2013 U.S.Dist. Lexis 194436, *6-*7.) Residence is determined based on the facts at the time the motion is considered by the trial court. (*Myers v. Carter, supra,* at p. 626; *Mireskandari v. Daily Mail & General Trust PLC, supra,* at *6.)[6] The trial court found there was a conflict of testimony as to Keshen's residence but that it was "[m]ore reasonable to believe she is an out-of-state resident."

In support of the motion for an undertaking, counsel for Buffington Law and Attorney Buffington declared: (1) Keshen was not a California resident; (2) throughout the malpractice litigation, Keshen had used an address in New Mexico; (3) Keshen had recently claimed to have moved to Nassau County, Florida; (4) Keshen had not provided change of address information to the trial court or counsel; (5) on August 22, 2018, Keshen stated she was not a California resident; and (6) on October 12, 2018, Keshen stated that was now a resident of Florida. The declaration attached e-mails from Keshen in which she stated she would not be appearing at her deposition because, in part, "I am not a CA resident," and that her residence was in Nassau County, Florida.

---

[6] For this reason, Keshen's argument that Buffington Law and Attorney Buffington are judicially estopped from challenging her California residence because the cross-complaint alleged on information and belief that Keshen was a resident of California is meritless.

15

Keshen's declaration in opposition to the motion for an undertaking includes the following: (1) "I have a residence in Los Angeles County, since 2006, which was totally destroyed in the Woolsey fires on November 9, 2018"; (2) "I have spent and continue to spend considerable time at my CA residence and to reside in CA. During 2017 I resided at my home for approximately 6 plus months"; (3) "My CA residence title is in a CA LLC that I am the sole member and manager of, this entity does business in CA. I pay considerable taxes in the state of CA amounting to more than $500,000 dollars over the time of owning my property. Now that it has been destroyed, these county and state obligations have not ceased"; (4) "I formerly had a residence in Santa Fe NM. I still own commercial property in the state of NM and have had an office in the state. I recently have a new second residence in FL and a family investment office there"; and (5) "Due to the abrupt and catastrophic destruction of my CA residence in the Woolsey fires in November of 2018, it requires full time effort to oversee the legal, insurance, recovery, permitting and rebuilding of my residence and I am required to be continually present in CA."

In their reply papers, Buffington Law and Attorney Buffington submitted the declaration of the tenant who had rented Keshen's Malibu house which was destroyed in the Woolsey fire, under a written lease that ran from December 15, 2017, through June 14, 2019.

Based on the foregoing factual offerings by the parties, the trial court was justified in finding it was more likely that Keshen was *not* a resident of California. The trial court did not abuse its discretion.

Keshen's second argument—that because the retainer agreement was void she could not be ordered to post an undertaking to cover the potential recovery of attorney fees—is meritless. The motion sought an undertaking in the total amount of $146,338.10, with $43,320.96 for costs already incurred, $4,000 for future costs, and $99,017.14 for attorney fees. But the trial court only ordered an undertaking to cover the

16

*costs* of the litigation in the amount of $47,320.96.  The court did *not* order Keshen to post an undertaking for any portion of attorney fees allegedly owing pursuant to the parties' retainer agreement.  Keshen's statements to the contrary in her appellate briefs are simply incorrect.

3.

*The Trial Court Did Not Err by Dismissing the Complaint for Failure to Post an Undertaking.*

The trial court granted the motion for an undertaking in January 2019. Keshen never posted the undertaking.  Buffington Law and Attorney Buffington filed a motion to dismiss the complaint on February 21, 2019, three weeks after the undertaking was to be posted.  In response to the motion to dismiss, Keshen argued that the original order on the undertaking was based on a fraud perpetrated on the court and judicial estoppel.  While Keshen claimed that she had incurred significant out-of-pocket costs in connection with the loss of her property in the Woolsey fire, and had depleted her liquid assets, she did not assert in her declaration that she was unable to cover the $4,500 bond payment.  The trial court noted in the minute order that this was an argument Keshen had "not raised or supported."

In ruling on the motion to dismiss, the trial court stated:  "She's had an awful long time to be able to post that bond.  [¶] . . . [¶] And it's not even a lot of money. I mean, the bond might sound like a lot, but to post a bond is only 10 percent of the amount.  [¶] . . . I mean if she was going to do it, she would have done it.  I mean, we're talking millions and the bond was for, what, $45,000?  So it would be . . . $4,500 that she post[ed].  In a case like this, that's not a lot."

Although Keshen argues on appeal that the trial court erred by *dismissing* her complaint for failure to post an undertaking, the motion to dismiss for failure to post an undertaking did not occur until *after* the trial court granted the motion for summary judgment on the complaint.  Therefore, the order dismissing the complaint for failure to

17

post the undertaking was essentially moot; even if the order was improvidently granted, Keshen could not have suffered any prejudice because her complaint had already been resolved by summary judgment.

## II.

### ISSUES RELATING TO BUFFINGTON LAW'S CROSS-COMPLAINT

#### A.

##### *THE TRIAL COURT DID NOT ERR BY AWARDING DAMAGES TO BUFFINGTON LAW.*

Normally, an appeal from a judgment entered after trial will be governed by the substantial evidence standard of review. In this case, however, the issue is whether the trial court erred by awarding damages to Buffington Law despite its violation of Rules of Professional Conduct, former rule 3-310.[7] Under these circumstances, we review the trial court's decision for abuse of discretion. (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 90 (*Sheppard Mullin*) [where law firm seeks fees in quantum meruit for services performed while acting under a conflict of interest, trial court must "exercise its discretion to fashion a remedy that awards the attorney as much, or as little, as equity warrants, while preserving incentives to scrupulously adhere to the Rules of Professional Conduct"].)

We do, however, follow the traditional rule that the judgment is presumed to be correct and the burden of demonstrating error rests squarely on the appellant. (See *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631-632, and cases cited therein.) When an appellant raises an issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785; see *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 [appellate court not required to consider points not supported by citation to authorities or record].) An appellant may not simply make the assertion the

---

[7] All further references to rules are to the California Rules of Professional Conduct, unless otherwise specified.

18

ruling is erroneous and leave it to the appellate court to figure out why. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)  It is also the appellant's burden to provide an adequate record. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.)  These rules apply equally when the appellant is self-represented. (*Leslie v. Board of Medical Quality Assurance* (1991) 234 Cal.App.3d 117, 121.)

Keshen did not provide this court with a reporter's transcript from the trial, and we presume sufficient evidence was presented to support the trial court's findings. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154.)[8]  Our review is limited to determining whether any error appears on the face of the record. (Cal. Rules of Court, rule 8.163.)

Following the bench trial, the trial court issued the following minute order: "California Rules of Professional Conduct requires written disclosure to the client of a payment arrangement which accepts funds from one other than the client.  Where a notice in writing must be delivered to the client, a verbal or agreed notice is not sufficient.  [¶] Though written disclosure of the payment arrangement on behalf of Mary Anne Keshen by her father should have been given to Mary Anne Keshen, the client, pursuant to Rules of Professional Conduct [former rule] 3-310, there was no evidence that the failure to do so in any way harmed Ms. Keshen.  There was no evidence that Buffington Law Firm ever acted against any interest of Ms. Keshen by receiving payment of her fees from Leonard Keshen, her father.  [¶] Case law does not require that all compensation to the attorney is barred for failing to observe this specific requirement contained in the Rules

---

[8]  A court reporter was present at the bench trial.  The reporter had been secured by and paid for by Buffington Law.  Keshen requested the transcript of the trial from the Orange County Superior Court, but the court notified Keshen there was no record of a transcribed hearing on the date of the trial.  Keshen does not appear to have attempted to obtain an alternate form of the record, such as a settled statement.

19

of Professional Conduct.  The fees which may be allowed are pursuant to quantum meruit.  [Citation.]  [¶] The Court has awarded fees pursuant to quantum meruit."

Former rule 3-310(F) provided:  "A member shall not accept compensation for representing a client from one other than the client unless:  [¶] (1) There is no interference with the member's independence of professional judgment or with the client-lawyer relationship; and [¶] (2) Information relating to representation of the client is protected as required by Business and Professions Code section 6068, subdivision (e); and [¶] (3) The member obtains the client's informed written consent, provided that no disclosure or consent is required if:  [¶] (a) such nondisclosure is otherwise authorized by law; or (b) the member is rendering legal services on behalf of any public agency which provides legal services to other public agencies or the public."[9]

A conflict of interest that makes a written retainer agreement unenforceable as against public policy "does not categorically disentitle the law firm from recovering the value of the services it rendered to the [client]; whether principles of equity entitle the law firm to some measure of compensation is a matter for the trial court to address in the first instance."  (*Sheppard Mullin, supra,* 6 Cal.5th at p. 68.)  "California law does not establish a bright-line rule barring all compensation for services performed subject to an improperly waived conflict of interest, no matter the circumstances surrounding the violation."  (*Id.* at p. 89.)[10]

Keshen relies on *Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1169 (*Fair*), in which the appellate court held that the trial court could deny all recovery under

---

[9]  The Rules of Professional Conduct were thoroughly revised in 2018.  Rule 1.8.6 currently prevents an attorney from accepting compensation from a nonclient unless the client has provided informed written consent.

[10]  We disregard Keshen's citations to *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Company, Inc.* (2016) 244 Cal.App.4th 590 because the California Supreme Court granted review of the Court of Appeal's opinion and reversed.

20

a quantum meruit theory to an attorney whose serious breach of fiduciary duty and violation of former rule 3-300 and Probate Code section 16004 "infected the entire [attorney-client] relationship."[11]  But *Fair* also emphasizes that the determination of whether and in what amount fees should be awarded to an attorney who has breached a duty to a client remains a matter for the trial court's discretion.  And, here, the trial court specifically found that the failure to comply with former rule 3-310 did not harm Keshen and that Buffington Law did not act adversely to her interests.  Under such circumstances, *Fair* and the authorities it cites do not require that attorney fees be denied completely; to the contrary, *Fair* leaves the recovery of fees within the trial court's discretion.  (*Fair, supra,* 195 Cal.App.4th at pp. 1150-1151, 1158-1168.)  There is nothing in the appellate record that shows the trial court abused that discretion in any way.

In determining whether attorney fees should be forfeited, the trial court may consider "'the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies.'"  (*Sheppard Mullin, supra*, 6 Cal.5th at p. 94.)

Citing *Sheppard Mullin, supra,* 6 Cal.5th at page 95, Keshen argues that the agreed-upon contract can never be the basis for the fees award in a quantum meruit case.  Yet the very portion of that opinion to which Keshen cites reemphasizes that the issue of whether and how much to award in attorney fees is a matter for the trial court's discretion, and that in the *Sheppard Mullin* case itself, the evidence did not support completely barring recovery by the law firm.  (*Id.* at pp. 95-96.)

---

[11]  Former rule 3-300 prohibited an attorney from entering into a business transaction with a client or knowingly acquiring a pecuniary interest adverse to a client; Probate Code section 16004 prohibits a trustee from using trust property for the trustee's own profit or taking part in a transaction with an interest adverse to the trust beneficiaries.

21

Keshen's argument that, as a matter of law, the trial court could not award Buffington Law any fees in quantum meruit fails. Keshen does not raise any argument as to the amount of fees awarded.

In the reply brief, Keshen argues that the trial court applied the wrong standard, failed to consider all relevant factors, improperly shifted the burden of proof to Keshen, and erred by awarding quantum merit damages when Buffington Law failed to plead or prove that it provided a benefit to Keshen. But because there is no transcript from the trial in our record, Keshen cannot support any of these claims.

B.

*THE TRIAL COURT DID NOT ERR BY DENYING KESHEN'S MOTION TO AMEND HER ANSWER TO THE CROSS-COMPLAINT AND HER MOTION FOR RELIEF FROM DEEMED ADMITTED ADMISSIONS.*

After the trial court granted the motion for summary judgment on Keshen's complaint, Keshen filed a motion for leave to amend her answer to the cross-complaint to assert Buffington Law's violation of the Rules of Professional Conduct voided the retainer agreement. Buffington Law opposed the motion on the ground that amendment would be an idle act in light of Keshen's deemed admission that the retainer agreement was a legally enforceable contract. Keshen also filed a motion to amend or withdraw the admissions pursuant to section 2033.300.

The trial court denied both motions: "This motion [to amend the answer] is brought two weeks before trial despite Keshen's Answer being filed 3/2/18; This appears to be an end-run around the RFAs that have been deemed admitted; Further, granting this motion would result in severe prejudice to Buffington; Deny."

As to the motion for relief from the deemed admissions, the court's order reads: "Keshen has not shown that the admissions resulted from 'mistake, inadvertence or excusable neglect'; Further, Buffington would be substantially prejudiced if Keshen were granted this relief; [¶] Plaintiff testifies that her focus was diverted to other Motions

22

and she forgot to serve verifications to the RFAs; The Court finds she has admitted she timely knew about the discovery as shown through meet and confer correspondence attached to the Opposition; The discovery was served on August 30, 2018 – Keshen chose not to respond although the Court confirmed on 1/24/19 that there was no stay in place and the stay had been lifted on 5/31/18; Keshen still refused to provide responses – even after that clarification, which was four months prior to the Court's hearing on the Motion to Deem RFAs Admitted; [¶] Even if Keshen believed that she only received notice of the RFAs on 4/5/19 she still had 40 days to get the responses and verifications served, and she could even have brought them to the hearing on 5/15/19; [¶] On Reply, Keshen argues in her unsworn Memorandum that her father had just undergone major surgery at the time she responded to the RFAs; These 'facts' are conspicuously missing from the Moving Papers and Declaration in support thereof and cannot be considered, even assuming they are made under penalty of perjury; [¶] Deny motion."

We begin by setting forth the timeline relevant to both motions:

March 2, 2018: Keshen files her answer to Buffington Law's cross-complaint.

August 30, 2018: Buffington Law serves discovery, including requests for admission.

October 11, 2018: Buffington Law's counsel sends Keshen an e-mail saying discovery responses were not received and requests a meet and confer; Keshen does not deny being served with the discovery.

November 9, 2018: Woolsey fire.

February 22, 2019: Buffington Law files a motion to deem all requests admitted.

April 13, 2019: Keshen serves unverified responses.

April 29, 2019: Keshen serves what she claims are "substantially compliant" responses, per *Tobin v. Oris* (1992) 3 Cal.App.4th 814, 827, and says the

23

motion must be denied; the responses are not verified, contain objections, and are generally nonresponsive.

May 15, 2019:  After a hearing, the trial court deems all requests to be admitted on the ground that "[u]nverified responses are equivalent to no responses."  At the same hearing, the court grants the motion for summary judgment.

May 30, 2019:  Keshen serves verified amended responses.

June 7, 2019:  Keshen files motion to withdraw or amend the deemed admissions.

While we review the trial court's order denying relief from admissions for abuse of discretion (*New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1420-1421), the statute authorizes relief "only if [the trial court] determines that the admission was the result of mistake, inadvertence, or excusable neglect, and that the party who obtained the admission will not be substantially prejudiced in maintaining that party's action or defense on the merits" (§ 2033.300, subd. (b)).

Here, the trial court found that Keshen's failure to timely respond to the requests for admission was not the result of mistake, inadvertence, or excusable neglect. Rather the court found that Keshen knew about the pending discovery and knew there was no stay of the litigation in place.  While the destruction caused by the Woolsey fire undoubtedly affected Keshen's ability to respond to the requests for admission, she had failed to respond to the discovery before the fire occurred, and failed to attempt to provide proper responses until after the motion to deem the requests admitted had been granted.

We also review the denial of a motion for leave to file an amended answer for abuse of discretion.  (*Melican v. Regents of University of California, supra*, 151 Cal.App.4th at p. 175.)  Absent a """"manifest or gross abuse of discretion,"""" the trial court's order will be upheld.  (*Ibid.*)  A trial court does not abuse its discretion denying leave to amend when the amendment would be futile.  (*Royalty Carpet Mills, Inc. v. City*

24

*of Irvine* (2005) 125 Cal.App.4th 1110, 1125.)  Because Keshen had admitted the validity of the retainer agreement the amended answer would have challenged, amendment would have been futile.

### C.

#### *STATUTE OF LIMITATIONS DEFENSE.*

Keshen argued for the first time in her opening brief on appeal that the cross-complaint was barred by the statute of limitations.  However, Keshen withdrew the argument in her reply brief.

### DISPOSITION

The judgment is affirmed.  Respondents to recover costs on appeal.



FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


GOETHALS, J.

25